UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY BOULDING, #472529,

    Petitioner,

v.                                  Case Number 1:10-CV-12476
                                     Honorable Thomas L. Ludington

THOMAS BELL,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Timothy Boulding seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial in the Oakland County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct in violation of § 750.530b(1)(a) of the Michigan Compiled Laws. He was sentenced to concurrent terms of 25 to 40 years imprisonment in 2004.

In his petition, Petitioner raises claims concerning the admission of other acts evidence, the use of perjured testimony, the validity of his sentence, and the effectiveness of trial and appellate counsel. The claims lack merit. The petition will be denied, as will a certificate of appealability and leave to proceed in forma pauperis on appeal.

**I**

Petitioner's convictions arise from his sexual assault of his six-year-old granddaughter at his residence in Bloomfield Township, Michigan on February 27, 2003. The Court adopts the summary of the trial testimony provided by defense counsel on direct appeal before the Michigan Court of Appeals. Those facts are as follows:

Mashuna Moore, 7, lived with her mother, siblings and an aunt. She identified Defendant as her grandfather. [Sometimes called "dad."] The last time she had seen Defendant was at his house where she and her siblings played with blocks in the living room. Defendant called her to his bedroom and where she was alone with him. Her siblings had come with her but they were refused admittance. Defendant locked the door and told her to take off her clothes. At that time he was clothed but when he was on the bed he was wearing only a shirt although she did not see him take his clothes off. He was on the bed laying down clad in a shirt; no pants or underwear. She undressed except for her shirt which he instructed [her] to keep on. She placed her clothes on the side of the bed. He then told her to get on top of him; he was on his back dressed only in his shirt and was under the covers. He kissed her on the mouth for a short time. She got on top of him on her stomach which touched his private parts. [She pointed to her vaginal area.] His private parts touched her private parts and went inside where "He wiggled it around." She saw his private parts when he put his private parts in her. He "went up and down on me." He also used a thing called a "binky" and some Vaseline. He put the Vaseline on her private parts as well as his. It was on the bed when he inserted the binky. He lay flat on his stomach and got it from the closet. He put his mouth on her private parts "In between," using his tongue which went in between her private part; also a finger which he put inside her private parts. She was kind of under the covers. A binky is an object which is put in a baby's mouth and which was kept in his closet on top of his bed. [A picture of this in the closet was admitted into evidence.] She identified a picture of the bed. The Vaseline was kept in his drawer on top of the bed. His actions "felt nasty and it hurt." She did not tell him it hurt. He put the Vaseline on his finger and put it in her private parts. He also put the Vaseline on his private parts. The binky was moving when put into her private parts. She could feel it poke her. The actions also occurred on the bean bag chair located in front of the bed. He asked her whether she liked it but she could not remember her answer. When ordered, she got off the bed onto the bean bag chair.

When Defendant put his private parts in her he fell off the bean bag chair, following which his wife, Laura, arrived. He did not get up; he just scooted from the bed to the bean bag chair. Before that, Mashuna's brother tried to enter but Defendant would not permit [it]. After he fell, she put her clothes back on and left the room. After the ambulance came for Defendant, Laura took Mashuna and her siblings home.

The first person to whom Mashuna told this was her mother, Deon, who took her to the hospital where she was examined. Defendant had told her not to tell anyone. When asked if she was told to say what Defendant did, she answered that she did not know. She said she told the doctor what happened.

Demetrius Boulding, 13, is Mashuna's brother. When his brother went to use the bathroom, the witness went to check because he was also concerned about his

sister. When he went to the bedroom he saw Defendant naked and was told to step out of the room so Defendant could get dressed. The only people who were not in the living room were Mashuna and Defendant. When the witness went into the bedroom, Defendant was laying on the floor wearing nothing but a shirt, no diaper. This frightened him. He had seen him with just his shirt before but then his sisters were not present. The diaper, worn by defendant, was by the bed. Defendant said he broke his leg falling out of the wheelchair. When he walked into the room, Mashuna was leaning against the wall and was dressed. She appeared as if something [scary] had occurred, as if she was in trouble. She was frightened because Defendant was naked. He said the door was not locked but was closed; he heard it slam. Defendant told him he had fallen from the wheelchair, but told his brother that he fell from the bean bag chair and told the mother that he fell from the bed.

Deon Boulding,15, Mashuna's brother, said Mashuna got sleepy and wanted to take a nap. He had to use the bathroom and when he came out she was gone. Something told him to look and make sure she went to take a nap. He looked around and when got to Defendant's room she ran out and told him that Defendant had broken his leg. She had been gone five to 15 minutes. She was panicking like she was shocked. She was dressed. Defendant was not wearing anything on his bottom. When he told them to leave the room everyone left except Mashuna. Defendant said into Mashuna's ear, "don't worry. Everything's going to be okay." It was Mashuna who told him of the occurrence. They had their own rooms to sleep in so there was no reason she should have to go to Defendant's room. Defendant told him that he fell off the bed.

Doctor Lisa Ann Braun, a physician in the emergency department of Children's Hospital of Michigan, was told by Mashuna that Defendant "tried to do something nasty to me." He tried to kiss her on the mouth and put a binky (a pacifier) in her and tried to put his private parts into her private parts. When asked she pointed to her vaginal area. She indicated pain in her private area. Her hymen was unbroken but there was a bruising present on the left side of the hymen; red in color, done within 24 hours of the examination. The significance was trauma to her genital area in the form of bruising which was consistent with her history. The witness could not say it was the result of sexual abuse.

Detective James Cutright found a pacifier on a shelf in a cabinet in the headboard of the bed. In a shelf below that he found a container of lubricant and underneath the bed, in a drawer, he found a jar of Vaseline.

Forensic scientist Tara Reinholz compared a DNA sample from Defendant and one from Mashuna and a swab from the pacifier and could not exclude the two individuals from the comparison.

Tamara Boulding, now 20, Defendant's daughter, said when she was five, Defendant sexually molested her, penetrating her with his fingers, penis and orally almost everyday until she became eleven. He told her that if she told anyone he would go away for a while and would "whoop" her.

Helena Boulding, now 23, Defendant's daughter, spoke of abuse from an early age until age 13 or 14. She described penis and oral sex on her and on him; in her anal area. He also used a small toy. This happened on a daily basis, telling her not to tell.

Deon King, now 31, Mashuna's mother and Defendant's daughter was curious how Defendant could fall out of a chair so low to the floor and break his leg. Mashuna came to her the next morning and told her that Defendant "was freaking on me," telling her to take her panties and pants off, kissing her and feeling "on my butt." He was kissing her private parts and put her on top of his and was rubbing her back and forth. He put Vaseline on her private parts and put his finger and the binky inside of her; when she told him it hurt he told her to be quiet. He put the Vaseline on his private parts. If she told anyone he would go to jail. He kissed her private parts when she was in the bed; she saw his private parts.

When the witness was younger the same thing happened to her from six to 15 and 16; Defendant had sex with her on a number of occasions, describing the acts including the use of sexual toys. This stopped when she physically fought him off. Her children never went to his house until he was in a wheelchair. After this happened to Mashuna, the witness noticed her exhibiting a lot of anger and having nightmares. Her sons told her Defendant was lying naked on the floor (from the waist down). When they went to help him he told them, except for Mashuna, to get out. Mashuna told her it was her fault that Defendant broke his leg, "I'm going to be in trouble." The witness later found that this happened to Mashuna on more than one occasion and that her other daughter was in the bed when it happened.

Laura Jean Boulding, Defendant's wife described the jelly Defendant uses to insert his catheters and the Vaseline in which he dips his suppositories. She explained the pacifier as a gag gift. When she came home the day in question she found that he had fallen out of his chair and broken his leg. At the time he was wearing a t-shirt, Depends and socks. When she had left, he was wearing a fleece suit. Defendant is paralyzed from his waist down as a result of a roof collapse. She said he could not voluntarily have an erection but Viagra would work if he was stimulated. He is capable of trying intercourse "but it just didn't work out." She would stimulate him but she guessed he was capable of doing that himself. He is able to engage in oral sex. A whip was found next to the bed. She had never seen him with the pacifier nor act inappropriately toward of the children. She said Mashuna did not appear to be under stress other than concern about

> Defendant breaking his leg.  He is able to transport his wheelchair from the foot of a vehicle to the back.

Def. App. Br. 1–9 (internal citations omitted).  At the close of trial, the jury found Petitioner guilty of the charged offenses.  The court sentenced Petitioner to concurrent terms of 25 to 40 years imprisonment.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the admission of other acts evidence, his sentence and the effectiveness of trial counsel, and the search of his residence.  The Michigan Court of Appeals affirmed his convictions and sentence.  *People v. Boulding*, No. 256936, 2006 WL 168019 (Mich. Ct. App. Jan. 24, 2006) (unpublished opinion).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Boulding*, 718 N.W.2d 330 (Mich. 2006).

Returning to the trial court, Petitioner filed a motion for relief from judgment raising claims concerning prosecutorial misconduct, sentencing error, and the effectiveness of trial and appellate counsel.  In evaluating the motion, the trial court applied Michigan Court Rule 6.508, which provides:

> The court may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3) (formatting omitted).  The trial court concluded that Petitioner had not established either good cause or actual prejudice and denied the motion.  *People v. Boulding*, No. 03-190929-FC (Oakland Co. Cir. Ct. July 23, 2008) (unpublished opinion).  Petitioner filed a

delayed application for leave to appeal in the Michigan Court of Appeals, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Boulding*, No. 292777 (Mich. Ct. App. Sept. 1, 2009) (unpublished opinion). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was also denied. *People v. Boulding*, 779 N.W.2d 810 (Mich. 2010).

Petitioner then filed his federal habeas petition, raising seven claims. First, Petitioner argues, he was deprived of his right to due process when evidence of prior, uncharged crimes was admitted into evidence. Second, the sentencing court improperly considered his lack of remorse during allocution. Third, his Sixth Amendment right to effective assistance of trial counsel was violated. Fourth, his right to due process was violated by the prosecutor's use of perjured testimony from a key witness. Fifth, his offense variables were scored erroneously. Sixth, his sentence was increased based on facts neither proven to a jury beyond a reasonable doubt nor admitted by him in violation of the Fifth, Sixth, and Fourteenth Amendments. And seventh, his Sixth Amendment right to effective assistance of appellate counsel was violated.

Respondent filed an answer to the petition contending that it should be denied because it is untimely and because the claims lack merit or are procedurally defaulted or both.

**II**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case, permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21(2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

A state court decision to be "contrary to" clearly established precedent, the Supreme Court explains, "if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams*, 529 U.S. at 405-06.

A state court decision involves an "unreasonable application" of clearly established precedent, the Court explains, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The Court cautions, however, that an unreasonable application of federal law is different from an incorrect application of federal law. Unanimously emphasizing the limited nature of this review in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Court reiterated that AEDPA imposes a highly deferential standard for evaluating state-court rulings, writing: "A state court's determination that a [petitioner's] claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785–86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III

Federal courts on habeas review are not required to address procedural issues before deciding against a petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (explaining that a federal habeas court need not address a procedurally defaulted issue before deciding against a petitioner on the merits). The United States Supreme Court explains: "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. This is such a case. Accordingly, the Court shall proceed to the merits of the petitioner's claims.

### A

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting "other acts" evidence — specifically, his prior sexual assaults upon his daughters. The

Michigan Court of Appeals denied relief on this claim, finding that the evidence was properly admitted under state law as evidence of a common plan or scheme. *Boulding*, 2006 WL 168019 at *1.

Alleged error in the application of state evidence law is generally not cognizable as a ground for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The Sixth Circuit instructs: "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). State courts are the final arbiters of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

To the extent that Petitioner is asserting that the trial court erred in admitting the testimony under Michigan evidence law, he is alleging a state law claim that does not justify federal habeas relief. To the extent that Petitioner is asserting that the admission of the other acts violated his due process rights, the United States Supreme Court has not established that similar "other acts" evidence violates the Fourteenth Amendment. *See Dowling v. United States*, 493 U.S. 342, 352–53 (1990).[1] As the Sixth Circuit observes, "There is no clearly established

---

[1] While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is not warranted on this claim.

**B**

Petitioner next asserts that he is entitled to habeas relief because of ineffectiveness of trial counsel. Specifically, Petitioner argues that his counsel was ineffective for: (1) not presenting evidence that the victim tested positive for hepatitis B and Petitioner did not; (2) not impeaching the expert testimony that the victim's blood tests were normal; and (3) not objecting to the scoring of two offense variables (OV 3 and 13) of the state sentencing guidelines.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court has set forth a two-prong test for establishing ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears

the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The United States Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

In this case, the state trial court concluded that because the underlying premise of Petitioner's medical claim was faulty and the sentencing issue lacked merit Petitioner had not shown that trial counsel was ineffective. This conclusion is neither contrary to the facts or Supreme Court precedent.

First, as to the hepatitis B issue, the record reveals that the victim's blood tested positive for hepatitis B surface antibody, but negative for hepatitis B surface antigens and hepatitis B core antibody. This indicates that the victim received a hepatitis B vaccine — not that she was exposed to viral hepatitis. Petitioner's claim that the hepatitis B test supports an argument that he did not have sexual contact with the victim is thus contradicted by the record evidence. Petitioner establishes neither that counsel erred nor that he was prejudiced by counsel's conduct.

Second, as to the scoring of the sentencing guidelines, for reasons detailed below those guidelines were properly scored. Consequently, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct in not objecting to the scoring of the offense variables.

In sum, the petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## C

Petitioner further asserts that he is entitled to habeas relief because the prosecution presented perjured testimony from Dr. Braun regarding the victim's test results.

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343

(6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343. "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty." *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009).

Here, the state trial court denied relief on this claim, finding that the underlying premise of Petitioner's perjury claim was inaccurate and that Dr. Braun's testimony concerning the hepatitis B test results was based upon a valid interpretation of the test results. Again, the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

Petitioner does not demonstrate that Dr. Braun's trial testimony was false rather than an interpretation of the medical evidence. Moreover, Petitioner has not established that the prosecution knowingly presented false testimony. There is no indication in the record that the prosecutor believed that Dr. Braun, or any other witness, provided false testimony at trial or that the prosecutor had reason to doubt the veracity of the testimony at that time. Habeas relief is not warranted on this claim.

**D**

Petitioner next asserts that he is entitled to habeas relief because the trial court committed sentencing errors. As an initial matter, the Court notes that Petitioner's sentences are within the

statutory maximum. *See* Mich. Comp. Laws § 750.520b(1)(a) (first-degree criminal sexual conduct is punishable by imprisonment for life or a term of years). A sentence within the statutory limit is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are generally not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner has made no such showing.

Petitioner nevertheless argues that the trial court erred at sentencing by considering his lack of remorse. The Michigan Court of Appeals denied relief on this claim, finding that the trial court properly considered the petitioner's lack of remorse and unlikelihood of rehabilitation in imposing his sentence. *Boulding*, 2006 WL 168019 at *2. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

In *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999), the United States Supreme Court held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime. The Supreme Court expressly declined to consider the questions of whether a defendant's silence bore upon a court's determination of lack of remorse or upon a defendant's acceptance of responsibility for the purpose of a downward departure under the federal sentencing guidelines because those issues were not before the Court. *Id.*

In this case, the trial court's remarks reflect that the court was concerned about the severity and ongoing nature of the crimes and Petitioner's lack of remorse and low capacity for rehabilitation, rather than penalizing him for any refusal to admit guilt at the time of trial or sentencing. *See Paluskas v. Bock*, 410 F. Supp. 2d 602, 615 (E.D. Mich. 2006) (denying habeas relief on similar claim). Lack of remorse and potential for rehabilitation are appropriate sentencing considerations under Michigan law, *see People v. Houston*, 448 Mich. 312, 323, 532 N.W.2d 508 (1995), and are not precluded by federal law. *See In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) ("It is well established that a defendant's remorse-or lack thereof-is an appropriate consideration in meting out punishment."); *United States v. Castillo-Garcia*, 205 F.3d 887, 889 (6th Cir. 2000) (lack of true remorse is valid consideration under federal sentencing guideline providing for downward adjustment based upon acceptance of responsibility). The record indicates that the state trial court imposed a sentence based upon the circumstances of the crime and other permissible considerations. Habeas relief is not warranted on this claim.

## E

Petitioner further asserts the trial court improperly scored certain offense variables of the state sentencing guidelines. This claim, however, is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov.19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).

Any error in scoring the offense variables or departing above the guidelines does not merit habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived state law errors. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Moreover, even if this claim were cognizable, Petitioner has not shown that the trial court erred in scoring the disputed offense variables. As explained by the trial court in denying relief from judgment, there was sufficient evidence in the record, including the victim's testimony and the medical testimony, to support the scoring of Offense Variable 3 (physical injury to the victim) at 10 points and Offense Variable 13 (pattern of felonious criminal activity involving three or more sexual penetrations against a person less than 13 years of age) at 50 points under the sentencing guidelines. Habeas relief is not warranted on this claim.

F

Petitioner next asserts that the trial court improperly relied upon facts neither admitted by him nor proven beyond a reasonable doubt in imposing his sentence. The Michigan Court of Appeals denied relief on this claim. The court explained that that the Supreme Court cases relevant to this issue — such as *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) — do not apply to Michigan's indeterminate sentencing scheme. The court's decision is not an unreasonable application of federal law.

Indeed, Petitioner's argument is foreclosed by binding Sixth Circuit precedent, which holds: "The *Blakely-Apprendi* rule does not prohibit all judicial factfinding in the sentencing

context. It does not, for example, apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding." *Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009); *see also People v. Drohan*, 475 Mich. 140, 160–61, 715 N.W.2d 778 (Mich. 2006).

Because Petitioner's sentences are within the statutory maximum penalties, which were not enhanced by judicial fact-finding, no Sixth Amendment or due process violation occurred. Habeas relief is not warranted on this claim.

### G

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claim, perjured testimony claim, and certain sentencing claims on direct appeal.

In order to establish ineffective assistance of appellate counsel, a petitioner must satisfy *Strickland*'s two-part test of showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. As noted, judicial scrutiny of counsel's performance is "highly deferential," *id*. at 689, and the defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002); *see also Fautenberry v. Mitchell*, 515 F .3d 614, 642 (6th Cir. 2008). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

In this case, Petitioner has not demonstrated that his appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues concerning the admission of other acts evidence, sentencing, and the effectiveness of trial counsel on direct appeal. Those issues, while not warranting reversal, were substantial and the claims presented in the motion for relief from judgment are not obviously stronger. Moreover, given the state court decision and this Court's determination that the foregoing claims lack merit, Petitioner cannot establish that appellate counsel erred or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to argue a meritless position. *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on this claim.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id*. at 336–37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

V

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

Dated: October 29, 2012

                                             s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

-20-

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Timothy Boulding #472529 at Gus Harrison Correctional Facility, 2727 E. Beecher Street, Adrian, MI 49221 by first class U.S. mail on October 29, 2012.
>
> s/Tracy A. Jacobs
> TRACY A. JACOBS